### APPEAL OF AMERICAN COMPOUNDING CO.

Docket No. 1145.   Submitted March 30, 1925.   Decided June 11, 1925.

*George E. Goodman*, *C. P. A.*, for the taxpayer.
*J. Arthur Adams*, *Esq.*, for the Commissioner.

Before MARQUETTE, SMITH, and TRUSSELL.

This is an appeal from a determination by the Commissioner of deficiencies in income and profits taxes for the years 1918, 1919, and 1920, aggregating $2,861.78, resulting from the denial of the taxpayer's claim for classification as a personal service corporation for those years.

### FINDINGS OF FACT.

The taxpayer is a corporation with its principal place of business in Jasper, Ala. It was organized in 1913 with authorized capital in the amount of $2,000 paid in in cash for 80 shares of stock of a par value of $25 each. W. C. Clark, promoter of the corporation, subscribed for most of the stock. Ten shares were subscribed for by Dr. G. P. Baughn, and a few shares were purchased by one or two other individuals. By 1918 Clark had acquired 67 of the 80 shares of stock; in 1919 he owned 79 shares; and in 1920 he owned all of the stock. Since the organization of the taxpayer Clark has been its president and has always been actively engaged in the conduct of its affairs.

Of the cash paid in for stock, $1,000 was used in the purchase of furniture and fixtures and the remaining $1,000 was paid to Dr. Baughn for a secret formula for a cure for pellagra, which had been discovered and developed by him. This treatment for pellagra had come to the attention of Clark when Dr. Baughn treated and cured some of the employees at a coal mine which Clark was operating.

From the date of its organization, and during the years 1918, 1919, and 1920, the taxpayer was engaged in manufacturing and compounding medicine under this formula and selling what it

termed a treatment for pellagra. This treatment consisted of medicine, instructions with reference thereto, and advice as to diet. Six different medicines were used; one in the form of a capsule and another used as bath salts were considered the regular treatment. The capsule was deemed to be the real cure for pellagra while the other medicines were looked upon as aids to put the patient in proper condition. All of the medicines, with the exception of one stomach medicine and constipation tablets, were manufactured by the taxpayer.

Patients were procured through extensive advertising and most of the business was conducted by correspondence. Upon receipt of a request for treatment, a questionnaire was sent out for the purpose of ascertaining the symptoms and condition of the applicant, provided the condition was not described in the application. Upon receipt of the required information the case was diagnosed and the medicine sent out. The capsule, which was considered the real cure for pellagra, was prescribed in every case. In some of the bad cases a certain diet was designated. The work of diagnosing the case was done by Clark and Dr. Baughn, until the latter withdrew from the corporation, after which Clark worked alone. In some instances, where requests were made for treatment and Clark was absent, the regular treatment, consisting of the capsule and bath salts, was sent out by one of the girls in the office. If, however, an application disclosed complications, the case was sometimes held until the return of Clark.

Clark was not a licensed physician, and only a small per cent of the applicants for treatment were personally examined by him. In most cases the diagnosis was based upon the information contained in the written applications and questionnaires.

The medicine was sent out in packages purporting to contain 30 days' treatment, for which a charge of $10 was made. If more medicine was required during the 30-day period no additional charge was made. This price, which remained the same regardless of whether or not one or more medicines were furnished, was adopted to avoid difficulties in reaching agreements as to the proper amounts to be paid for the medicine. The maximum charge for a cure was $50, and, if a cure was not effected within five months, additional medicine was furnished without further charge. On each package of medicine for which the taxpayer received $10 a Federal excise tax of 40 cents was paid.

The taxpayer operated under a "no cure no pay" guarantee, and if a patient used the treatment according to instructions and was not cured in 12 months, if an adult, and in 6 months, if a child, the money paid was refunded with interest.

The medicines were never offered for sale or distribution through druggists or other dealers and could be obtained only from the taxpayer.

The gross sales, cost of goods sold, expenses, and amounts claimed for exhaustion, wear and tear for the years 1918, 1919, and 1920, are shown on the taxpayer's returns for those years, as follows:

|  | 1918 | 1919 | 1920 |
|---|---|---|---|
| Gross sales | $51,608.28 | $38,268.89 | $33,814.58 |
| Cost of goods sold | 5,159.87 | 850.71 | 1,815.95 |
| Expenses | 27,777.44 | 22,194.32 | 21,161.18 |
| Exhaustion, wear and tear | 1,063.60 | 140.20 | 450.00 |

The major portion of the expenses shown were amounts paid for advertising.

During the years in question the taxpayer employed five or six girls in the office and in the manufacture of medicine. The equipment used in manufacturing and compounding the medicine consisted for the most part of an electric grinding machine and a large stove.

For the years 1918, 1919, and 1920 the taxpayer filed returns as a personal service corporation. The Commissioner denied the right of the taxpayer to such classification and determined deficiencies for each of the years 1918 to 1920, inclusive, aggregating $2,861.78, from which the taxpayer brings this appeal.

DECISION.

The determination of the Commissioner is approved.

OPINION.

TRUSSELL: The taxpayer's business is founded upon the exploitation of a certain secret medicinal formula, and its gross income is derived wholly from sales of preparations compounded according to such formula. This formula is an important capital element and is a material factor in producing profits.